IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

WEALTH BUILDING
CORNERSTONES, LLC,

                                OPINION AND ORDER

             Plaintiff,

                              13-cv-456-bbc

     v.

LEAP SYSTEMS, LLC,

             Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Plaintiff Wealth Building Cornerstones, LLC, filed this civil action seeking a judgment under 28 U.S.C. § 2201 declaring that (1) its contract with defendant Leap Systems, LLC, expired and has not been renewed; (2) its product, Wealth Building Cornerstones, does not include any of defendant's intellectual property; and (3) plaintiff has not infringed and will not infringe any of defendant's intellectual property by developing and selling the Cornerstones product.  (The intellectual property at stake is alleged to be proprietary products developed by defendant to help financial professionals and consumers "organize, strategize, coordinate, and verify client financial decisions," as well as property developed by plaintiff.  Def.'s Br., dkt. #8, at 2.)

As an initial matter, I note that in an order dated November 20, 2013, dkt. #33, I ordered plaintiff to show that this court had subject matter jurisdiction under 28 U.S.C. § 1332.  The parties' briefs on defendant's motion to dismiss had revealed that defendant was

1

not a corporation, as plaintiff had pleaded in its complaint, but rather a limited liability company, and neither party had provided information on the citizenship of defendant's members, as required by 28 U.S.C. § 1332.  Plaintiff complied with that order by amending its complaint to provide information on the citizenship of defendant's members, dkt. #34, alleging that defendant is a citizen of New Jersey, Pennsylvania and Delaware.  Because plaintiff is a citizen of Indiana and Wisconsin and it has pleaded that the amount in controversy exceeds $75,000.  This is adequate to show diversity jurisdiction at this stage of the proceeding.

Defendant has filed a motion to dismiss on the grounds that (1) subject matter jurisdiction does not exist because there is no case or controversy between the parties; (2) plaintiff has failed to state a claim upon which relief may be granted, in violation of Fed. R. Civ. P. 12(b)(6); (3) the court should decline to exercise its discretion under 28 U.S.C. § 2201; and (4) venue is improper in the Western District of Wisconsin because defendant (the natural plaintiff) would have filed suit in a different forum but for plaintiff's preemptive suit.  In the alternative, defendant argues that this case should be transferred to the United States District Court for the District of New Jersey under 28 U.S.C. § 1404 because that forum would be more convenient for the parties and would better serve the interests of justice.

Defendant did not raise its Rule 12(b)(6) argument until it filed its reply brief, leaving plaintiff without an opportunity to address the argument in the normal course of briefing. Therefore, I will grant plaintiff's motion to file a surreply brief.  Dkt. #19.

2

I conclude that defendant has not shown that subject matter is lacking, that plaintiff has failed to state a claim on which relief may be granted, that it would be inappropriate for the court to decline exercise of its jurisdiction in this matter or that venue is not proper here. I conclude also that transfer to New Jersey is not required under § 1404. Therefore, defendant's motion to dismiss or to transfer will be denied.

## ALLEGATIONS OF COMPLAINT

Plaintiff Wealth Building Cornerstones, LLC, and defendant Leap Systems, LLC are engaged in developing and marketing financial planning products, including software, videos and templates. Plaintiff is a limited liability company with citizenship in Wisconsin and Indiana. Father and son Art and Jason Sanger are plaintiff's "principals" or "managers." Defendant is a limited liability company with citizenship in Delaware, Pennsylvania and New Jersey. Defendant's principal place of business is in New Jersey, and at least two of its officers reside in New Jersey.

On August 8, 2012, plaintiff and defendant entered into an agreement to license and sell financial planning products developed by both companies. This agreement granted plaintiff a license to use defendant's intellectual property in its Cornerstones product and it allowed plaintiff to market and sell the Cornerstones product with defendant's intellectual property contained therein. (The parties have not disclosed what this intellectual property includes.) The agreement's choice-of-law clause selects New Jersey law to govern its provisions.

3

The agreement expired by its terms in February 2013 (six months after the effective date). The parties could have renewed the agreement in writing but did not do so. Nevertheless, royalties were paid by the parties and until June 2013, both parties sold and marketed the products as they would have under the agreement. On June 14, 2013, plaintiff wrote defendant to say that the August 2012 agreement had expired, that plaintiff was continuing to market the Cornerstones product despite the agreement's expiration and that the product no longer contained defendant's intellectual property. Plaintiff replied, saying it hoped to come to an agreement with defendant that would allow defendant to market and sell plaintiff's Cornerstones product but that doing so would not make plaintiff subject to the now-expired August 2012 agreement.

On June 24, 2013, defendant responded, saying that the August 2012 agreement was still in force despite the termination provision because "legal precedent" would renew the agreement when, as here, the parties had continued to operate as if the agreement were in force. Cpt., dkt. #34, exh. C. Furthermore, defendant told plaintiff, plaintiff's "unilateral termination of the existing agreement is unacceptable as per [its] offered terms." Id. Defendant stated that "[s]uch termination of the agreement places into jeopardy [defendant's] intellectual property, calls into question the obligations of the parties to continue to maintain, sell and market the products, and requires a thorough review of the entire preceding Agreement and its survivability terms to ensure both parties are meeting their post-termination obligations." Id.

Defendant gave plaintiff two choices: (1) "Rescind [your] enforcement of the

4

termination provision and mutually agree to extend the term of the Agreement"; or (2) "remain resolute in [your] position that the original Agreement is terminated" whereupon defendant would "decline [plaintiff's] offer to continue under a simple financial arrangement." Id. Under either scenario, defendant said, it would "then decide what course of action [it] must take which most appropriately protects its intellectual property rights, its company work efforts, and other post-termination Agreement-related obligations." Id. Defendant added that the course of action was "undefined" but that it would not accept plaintiff's current course of conduct and that plaintiff's belief that the August 2012 agreement had terminated "places [defendant's] intellectual property, the very property you needed [defendant's] permission to use in order to develop the Cornerstone's product, into jeopardy which is totally unacceptable to [defendant]." Id.

Defendant asked plaintiff to respond by the end of business on the following day. Instead, plaintiff filed this suit on June 26, 2013.


OPINION

A.  Case or Controversy Requirement

Plaintiff brought this declaratory judgment action under 28 U.S.C. § 2201, which provides that parties may ask "any court of the United States" to determine "the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought," but it must be "[i]n a case of actual controversy."  This requirement derives from Article III of the United States Constitution, which requires that

5

any action before a federal court must be an actual case or live controversy, not merely a hypothetical question. Hyatt International Corp. v. Coco, 302 F.3d 707, 712 (7th Cir. 2002) ("[A] declaratory action, like any other action, must satisfy Article III, which allows federal courts to act only in the event of actual 'cases and controversies.'").

Defendant argues that Article III jurisdiction is not met in this case for three reasons: (1) plaintiff's claims were not ripe when plaintiff filed its complaint because plaintiff did not file "in the clear face of suit"; (2) no live controversy exists between the parties because it is clear that defendant should win on the merits for most claims; and (3) plaintiff's breach of contract is moot because defendant agrees that the August 2012 contract has expired.

Defendant states the standard incorrectly on its first argument. In declaratory judgment actions such as this one, neither the concerns of ripeness nor Article III jurisdiction requires that the plaintiff be clearly facing suit from the defendant. MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 132 (2007) (holding that apprehension of suit is unnecessary for case or controversy to exist in declaratory judgment suit); cf. SanDisk Corp. v. STMicroelectronics, Inc., 480 F.3d 1372, 1380 (Fed. Cir. 2007) ("The Supreme Court's opinion in MedImmune represents a rejection of our reasonable apprehension of suit test.").

Rather, Article III requires that the controversy be concrete, that is, that it have immediate or conclusive consequences. Public Service Commission of Utah v. Wycoff Co., Inc., 344 U.S. 237, 244 (1952) ("The disagreement must not be nebulous or contingent but must have taken on fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to

6

be achieved in deciding them."); <u>Aetna Life Insurance Co. of Hartford, Connecticut v. Haworth</u>, 300 U.S. 227, 240-41 (1937) ("The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests."); <u>Commonwealth Plaza Condominium Association v. City of Chicago</u>, 693 F.3d 743, 748 (7th Cir. 2012) (citing <u>MedImmune, Inc.</u>, 549 U.S. at 127; <u>Aetna Life Insurance Co.</u>, 300 U.S. at 240-41).  A ripe and live controversy exists when "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." <u>MedImmune, Inc.</u>, 549 U.S. at 127.

In this case, plaintiff informed defendant of its intended course of conduct and its belief that the Cornerstones product was not infringing, and defendant responded that plaintiff's position was "totally unacceptable."  Cpt., dkt. #34, exh. C.  Although some of defendant's language was ambiguous (<u>e.g.</u>, "termination of the agreement places into jeopardy [defendant's] intellectual property" and determining the parties' rights and responsibilities "cannot be done on a hand-shake, especially with [defendant's] intellectual property at risk," <u>id.</u>) it nevertheless showed that defendant had "adverse legal interests" to those of plaintiff and that it wanted plaintiff to make immediate and concrete changes in its behavior.  <u>MedImmune, Inc.</u>, 549 U.S. at 127.

Defendant's letter made it clear that it would not accept plaintiff's proposed course of conduct and that it believed its position was supported by legal precedent ("[Plaintiff's] unilateral termination of the existing agreement is unacceptable as per [its] offered terms,"

7

and "[Defendant] cannot, under a variety of legal premises, accept [plaintiff's] proposed solution to continue supporting [the Cornerstones product] without an agreement." Cpt., dkt. #34, exh. C).  Defendant told plaintiff that it must renegotiate with defendant or defendant would no longer support the Cornerstones product, despite plaintiff's position that the product no longer contained defendant's property, and defendant said that it believed plaintiff's obligations remained in force, despite plaintiff's position that the agreement had terminated.

Thus, plaintiff filed this case after learning of defendant's adversarial position in order to settle the dispute between the parties and move on with its proposed business plans.  This is precisely the sort of suit declaratory judgments are meant to address.  Hyatt International Corp, 302 F.3d at 711 (plaintiff has presented "the usual declaratory judgment pattern, under which the 'natural' defendant wants to proceed with a business opportunity—e.g., the production of widgets—but it is impeded because of a lack of clarity as to its legal rights, fearing something like a possible patent infringement suit.").  The parties' disputes are therefore live and actual controversies.

Next, defendant says that it is so apparent that it should win on the merits that its disputes with plaintiff are not real controversies.  This statement includes its own refutation.  By asserting that it should win on the merits, defendant has proven that these claims are real controversies.  It is opposing plaintiff, a party with "adverse legal interests" and it seeks immediate relief in its favor.  Plaintiff's requests for declarations on (1) whether its product contains defendant's intellectual property; (2) whether it breaches the August 2012 contract;

8

and (3) whether it infringes defendant's intellectual property are therefore concrete controversies, appropriate for review.

Finally, defendant argues that whether the August 2012 contract expired presents no case or controversy: that issue no longer matters. "In general a case becomes moot 'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" <u>Murphy v. Hunt</u>, 455 U.S. 478, 481 (1982) (quoting <u>United States Parole Commission v. Geraghty</u>, 445 U.S. 388, 396 (1980)). Defendant says that it is no longer asserting a position adverse to plaintiff's; it now agrees with plaintiff that the August 2012 agreement did expire.

As with defendant's earlier argument, this one is a nonstarter. Defendant has argued both before and during this lawsuit that plaintiff is in breach of "ongoing obligations" under the contract, Dft.'s Br., dkt. #8, at 7, and that "section 4.7 [of the agreement] survives expiration of the License and Reseller Agreement." Dft.'s Reply Br., dkt. #18, at 4. <u>See also</u> Cpt., dkt. #34, exh. C. Defendant's arguments show that it disagrees with plaintiff about whether all obligations under the agreement have expired and whether plaintiff is breaching the agreement by selling its current product. Thus, the issue of the expiration of the agreement remains a live controversy.

## B. <u>Failure to State a Claim</u>

Defendant argues that the case should be dismissed under Fed. R. Civ. P. 12(b)(6) because plaintiff has failed to state a claim upon which relief may be granted. Defendant left

9

this argument to its reply brief, which would generally mean that I would ignore it, but I will consider it because plaintiff sought and obtained leave to file a surreply brief, dkt. #19, and has addressed defendant's argument.

Defendant says that although the August 2012 agreement has expired, it contains ongoing obligations and that plaintiff is in breach of them.  Defendant also says that "there can be no doubt" that the Cornerstones product "contained" defendant's intellectual property because the agreement was drawn up specifically to allow plaintiff to use that property when it was developing the Cornerstones product.  Dft.'s Reply Br., dkt. #18, at 4.  In defendant's view, because plaintiff's product must have contained defendant's intellectual property, selling the product without a current license violates (or violated) the August 2012 agreement.

Defendant does not explain how this matter could be decided on a motion to dismiss. "The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits," Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990) (internal quotations omitted), but defendant is asking the court to decide the merits of its case *against* plaintiff.  In doing so, it acknowledges that plaintiff has stated a viable legal claim but argues that the claim should be decided in its favor.  Such an argument is appropriate for summary judgment, not for a motion to dismiss.  Compare id. with Vukadinovich v. Board of School Trustees of North Newton School Corp., 278 F.3d 693, 699 (7th Cir. 2002) ("The primary purpose of summary judgment is to dispose of claims that have no factual support . . . .").  Therefore, I will deny defendant's motion to dismiss for plaintiff's failure to state a claim.

10

C.  Discretion over Declaratory Judgment

Defendant argues that this court should decline to exercise jurisdiction over plaintiff's declaratory judgment suit.  Defendant says that plaintiff brought its case too early, before it was in the "clear face of suit" but also that it waited until it knew defendant would so and filed its complaint in order to wrest the choice of forum from defendant.

As an initial matter, defendant's arguments are incongruous.  Defendant is saying on one hand that plaintiff did not yet have reason to believe that defendant would be filing suit but on the other that plaintiff did anticipate that defendant was ready to sue and raced to the courthouse to assert its own choice of forum.  Nevertheless, defendant's first argument was already addressed in the first part of this opinion on the issue of Article III jurisdiction. I see no reason to decline jurisdiction.  Defendant's second argument does not persuade me that declining jurisdiction would be just or prudent in this case.

The Court of Appeals for the Seventh Circuit has discouraged courts from accepting jurisdiction when parties have engaged in a race to the courthouse in circumstances like those present in this case.  Hyatt International Corp., 302 F.3d at 718 ("We have expressed wariness at the prospect of 'a suit for declaratory judgment aimed solely at wresting the choice of forum from the natural plaintiff.'") (quoting Allendale Mutual Insurance Co. v. Bull Data Systems, Inc., 10 F.3d 425, 431 (7th Cir. 1993))); Tempco Electric Heater Corp. v. Omega Engineering, Inc., 819 F.2d 746, 750 (7th Cir. 1987) ("[T]he federal declaratory judgment is not a prize to the winner of the race to the courthouse.")  (quoting Factors Etc.,

11

Inc. v. Pro Arts, Inc., 579 F.2d 215, 219 (2d Cir.1978))). In <u>Tempco</u>, 819 F.2d at 750, the court of appeals upheld the district court's decision to decline jurisdiction when the plaintiff filed its case just four days before the defendant filed its suit and after the defendant had made several threats to enforce its rights by filing suit.

This case is distinguishable because defendant did not explicitly threaten suit before plaintiff filed its case and defendant has not filed suit in a different forum. Instead, plaintiff desired to market and sell its product right away, without acting illegally or accumulating damages, so it filed suit. It followed the normal and appropriate pattern for declaratory judgment suits. <u>Hyatt International Corp.</u>, 302 F.3d at 711(discussing "the usual declaratory judgment pattern, under which the 'natural' defendant wants to proceed with a business opportunity—e.g., the production of widgets—but it is impeded because of a lack of clarity as to its legal rights, fearing something like a possible patent infringement suit."). <u>See also Tempco</u>, 819 F.2d at 749 ("A declaratory judgment is available where a party desires a declaration of the legal effect of a proposed or past course of action," such as when "(1) The controversy has ripened to a point where one of the parties could invoke a coercive remedy (i.e. a suit for damages or an injunction) but has not done so; and (2) Although the controversy is real and immediate, it has not ripened to such a point, and it would be unfair or inefficient to require the parties to wait for a decision.").

The remainder of defendant's argument is that this court should decline jurisdiction so that defendant may file the case in its desired forum. Because that argument overlaps the issue of venue, I will discuss it in the next section.

D.  <u>Venue</u>

Defendant contends that this case should be dismissed or transferred because venue in the Western District of Wisconsin is improper under 28 U.S.C. § 1391, and it argues that the case should be transferred under 28 U.S.C. § 1404(a) because this venue is inconvenient and does not further the interests of justice.  Proper venue under 28 U.S.C. § 1391(b) requires that cases be filed in (1) the district where defendant resides; (2) the district where "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated"; or (3) or the district in which defendant is subject to the court's personal jurisdiction if the first two provisions do not apply.  Defendant says that the District of New Jersey, not the Western District of Wisconsin, is where defendant resides and where the majority of the events giving rise to its claims occurred.  Plaintiff argues that venue is proper in the Western District of Wisconsin because property central to its claim is located here:  it keeps the master copy of its Cornerstones product in Madison, Wisconsin.  Moreover, it says that a substantial portion of the events central to this case occurred in Madison, Wisconsin, including development of the Cornerstones product as well as email and letter exchanges concerning the signing of the August 2012 agreement and the parties' present dispute.  Neither party makes a very convincing argument for keeping the case here or for transferring it, so I will award the tie to the party that sued first and deny defendant's motion on this issue.

Next, defendant argues that the case should be transferred under 28 U.S.C. § 1404(a).  This statute allows district courts to transfer an action that is properly before it but

13

that is inconvenient or unjust in its present forum.  28 U.S.C. § 1404.  Courts may transfer the case to whatever district court in which the case might have been filed or to any district or division to which all parties have consented.  "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'"  Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (quoting Van Dusen v. Barrack, 376 U.S. 612, 622 (1964)).  Thus, district courts consider the particular factors of each case and "weigh in the balance the convenience of the witnesses and those public-interest factors of systemic integrity and fairness that, in addition to private concerns, come under the heading of 'the interest of justice.'"  Id. at 30.

Defendant says that this forum is inconvenient and unjust because (1) venue would be more convenient in New Jersey; (2) defendant has counterclaims that contain a forum selection clause that names New Jersey as the exclusive forum; and (3) plaintiff has raced to the courthouse to choose the forum and should not be rewarded for doing so; and (4) a judge from the District Court for the District of New Jersey would be more familiar with New Jersey state law, which defendant says is the law governing the contract claims.

Defendant says the District Court for the District of New Jersey would provide a more convenient forum because two of defendant's officers reside in New Jersey, and the records of its intellectual property are in New Jersey.  However, plaintiff's principals (Art and Jason Sanger) reside in Madison, and its master copy of the Cornerstones product is in Madison as well.  Thus, it seems either forum would present equal convenience or

14

inconvenience to the parties, which means transfer will be denied.   <u>Van Dusen v. Barrack</u>, 376 U.S. 612, 645-46 (1964) ("Section 1404(a) provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient."); <u>Research Automation, Inc.</u>, 626 F.3d at 978 ("Where the balance of convenience is a close call, merely shifting inconvenience from one party to another is not a sufficient basis for transfer.").

Defendant argues that its counterclaims should tip the balance of these factors in its favor.  It says that it has compulsory counterclaims that have a forum selection clause listing the District Court for the District of New Jersey as the exclusive forum.  Defendant says that because these claims are compulsory, if the case is not transferred, defendant will either be forced to give up its rights under the forum selection clause and assert its claims here or file its claims in New Jersey, resulting in duplicative litigation.   In fact, the so-called "counterclaims" are not counterclaims at all because defendant wishes to assert them against parties other than plaintiff.   Thus, defendant's potential claims are not compulsory. Defendant may move to join these claims here or file them elsewhere; they are not a reason for transferring this case.

Next, defendant argues the interests of justice are served by transferring the case because doing so would discourage litigants from racing to the courthouse to prevent the natural plaintiffs from losing their choice of forum.  As discussed previously, however, plaintiff had adequate reason to file this declaratory judgment suit, so it would not be in the interests of justice to discourage plaintiff from filing this sort of case.

Finally, defendant says the August 2012 agreement's choice of law provision selects

15

New Jersey law to govern disputes arising under it, and thus the case should be transferred to allow federal judges in New Jersey to hear the case, because they are better versed in New Jersey law.  <u>Coffey v. Van Dorn Iron Works</u>, 796 F.2d 217, 221 (7th Cir. 1986) ("In a diversity action it is also considered advantageous to have federal judges try a case who are familiar with the applicable state law.").  Plaintiff does not dispute the application of New Jersey law but counters that this court is capable of hearing cases involving New Jersey law. Even if I assume that New Jersey law applies to any breach of contract claims in this case, by itself, the application of New Jersey law is insufficient reason to transfer the case.  It is just one factor among many to consider, most of which do not favor transferring this case. <u>Van Dusen</u>, 376 U.S. at 645 (when state laws are difficult or unclear, transferring the case to a court where judges are familiar with the laws may be advantageous if other factors also favor transfer).

Most factors weigh in favor of leaving the case in this forum.  For example, as plaintiff points out, transfer would delay determination of the case and speedy determination is why plaintiff brought this declaratory judgment suit.  <u>Fujitsu Ltd. v. Netgear, Inc.</u>, 07-cv-710-bbc, 2008 WL 2540602 (W.D. Wis. Apr. 4, 2008) ("[T]here is nothing improper with choosing to litigate in a forum that offers the possibility of a speedier trial so long as venue is proper there.").  I will therefore deny defendant's alternative motion to transfer under § 1404(a).


ORDER

IT IS ORDERED that the motion filed by plaintiff Wealth Building Cornerstones,

16

LLC, for leave to file a sur-reply brief, dkt. #19, is GRANTED and the motion filed by defendant Leap Systems, LLC to dismiss the case or, in the alternative, to transfer it, dkt. #7, is DENIED.

Entered this 10th day of January, 2014.

BY THE COURT:

/s/
BARBARA B. CRABB
District Judge

17